# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | |
|---|---|
| RUFUS RICKS, Jr., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 7:13-cv-00952-JHH-JEO |
| ) | |
| CAPTAIN JOHN HUTTON, *et al*., ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM OPINION**

Plaintiff, Rufus Ricks, Jr., filed this *pro se* action pursuant to 42 U.S.C. § 1983, alleging that he had been deprived of rights, privileges, or immunities afforded him under the Constitution or laws of the United States of America during his incarceration at the Bibb Correctional Facility in Brent, Alabama. Named as defendants in the amended complaint are Captain John Hutton; Lieutenant Felicia Ford; and Sergeant Robert Rutledge. The plaintiff seeks compensatory damages and injunctive relief.

## I.  CASE HISTORY

Because the initial complaint in this matter named fictitious defendants, the plaintiff was ordered on June 28, 2013, to amend his complaint by naming defendants who are subject to suit under 42 U. S. C. § 1983, identifying all defendants by name and/or other identifying information, and showing specifically how each named

defendant acted under color of state law to violate his federal rights. The plaintiff filed an amended complaint on July 19, 2013. (Doc. 8). On November 25, 2013, the court entered an Order for Special Report directing that copies of the initial and amended complaints be forwarded to the defendants and requesting they file a special report addressing the plaintiff's factual allegations therein. The parties were advised that the special report, if appropriate, might be construed as a motion for summary judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure. The defendants filed their special report on January 24, 2014, accompanied by affidavits and copies of certain administrative and medical records pertaining to the plaintiff and another inmate, Patrick Crenshaw. (Doc. 13). On August 22, 2014, the parties were notified that the court would construe the defendants' special report as a motion for summary judgment, and the plaintiff was notified that he would have twenty days to respond to the motion by filing affidavits or other material if he so chose. The plaintiff was advised of the consequences of any default or failure to comply with Fed. R. Civ. P. 56. *See Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985).

When the plaintiff failed to respond, the court entered an order on December 30, 2014, notifying the parties that the matter would be deemed submitted on January 12, 2015. (Doc. 16). The plaintiff responded by seeking appointment of counsel and advising the court that he wished to proceed with this matter. (Doc. 17). Although

his motion for appointment of counsel was denied, the plaintiff was afforded an additional ten days to respond to summary judgment on January 15, 2015. (Doc. 18). The plaintiff submitted a response on January 29, 2015. (Doc. 19). The plaintiff was afforded an additional ten days on February 4, 2015, to submit a further response. (Doc. 21). However, he has failed to file anything further. Accordingly, this matter is now before the court on the defendants' special report (doc. 13) which is being construed as a motion for summary judgment, and the plaintiff's response thereto. (Doc. 19).

## II.  SUMMARY JUDGMENT STANDARD

Because the special report of the defendants is being construed as a motion for summary judgment, the Court must determine whether the moving parties, the defendants, are entitled to judgment as a matter of law. Summary judgment may be granted only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Federal Rule of Civil Procedure 56.* In making that assessment, the Court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). Once that initial

burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial, and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." [citations omitted]. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

898 F.2d at 1532.

### III. PLAINTIFF'S FACTUAL ALLEGATIONS

The following facts are undisputed or, if disputed, taken in a light most favorable to the plaintiff, who is a state prisoner currently confined at the Donaldson Correctional Facility in Bessemer, Alabama. His complaint deals with events occurring at the Bibb Correctional Facility in Brent, Alabama, at which John Hutton

is a Correctional Captain, Felicia Ford is a Correctional Lieutenant, and Robert Rutledge is a Correctional Sergeant.

After a series of disciplinary infractions, all but one of which was resolved by a guilty plea (doc. 13-2), the plaintiff was placed in the disciplinary segregation unit on April 23, 2013, where he was placed in cell E2-3A with inmate Patrick Crenshaw.[1] (Doc. 1 at 3-4).[2] In the weeks leading up to this time, Crenshaw had been involved in several incidents at the prison, which the plaintiff contends put the defendants on notice that Crenshaw was too dangerous to have as a cellmate.[3]

On April 7, 2013, Crenshaw is reported to have stabbed two inmates. (Doc. 13-4 at 2). An investigation of the incident revealed that the stabbing "stemmed from Inmate Crenshaw being involved in a homosexual relationship with [the victims]." *Id*.[4] Two days later, an officer conducting a check in the segregation unit noticed blood on the floor of Crenshaw's cell and alerted a Sergeant who escorted Crenshaw

---

[1] The plaintiff alleges he was placed in the unit per the order of Captain Hutton. (Doc. 1 at 3). However, he was charged with two separate disciplinary infractions on that same day; (1) Failure to Obey a Direct Order (doc. 13-2 at 41), and (2) Indecent Exposure/exhibitionism/lewd conduct. *Id*. at 46. He eventually pled guilty to both charges. *Id*. at 44 and 49.

[2] The Bibb Correctional Facility has a limited amount of segregation space, therefore "inmates cannot be housed in single cells unless they are close custody." *Affidavit of Captain John Hutton*, doc. 13-3.

[3] The plaintiff contends that the defendants specifically targeted him for placement with Crenshaw "in retaliation for [his] speaking out against injustices that takes (sic) place at [the prison]." (Doc. 1 at 8).

[4] The incident report indicates Captain Hutton was notified of this incident. (Doc. 13-4 at 5).

to the medical unit. *Id*. at 6. The body chart prepared by a nurse indicated "several superficial abrasions and cuts to [Crenshaw's] left wrist." *Id*. at 6. According to the incident report, Crenshaw admitted to the Sergeant that he had cut himself "because he wanted to leave Bibb County." *Id*. at 6. On the advice of a nurse in the mental health unit, Crenshaw was placed in a "crisis cell with suicide mat and blanket smock." *Id*. at 6.

On April 13, 2013, Crenshaw was back in the E-dorm segregation unit, where he started a fire in his cell by lighting his blanket on fire. (Doc. 13-4 at 7). Crenshaw was again placed on suicide watch after he told a nurse in the medical unit that he "felt like hurting himself." *Id*. Two days later, a rover conducting a security check in the infirmary noticed that Crenshaw had flooded his cell, and was being "disruptive and combative." *Id*. at 9. Crenshaw was seen by a member of the mental health unit and reassigned living quarters "pending disciplinary action." *Id*. at 9. At that point he was placed back in the segregation unit in cell E2-3A, where the plaintiff would be placed a few days later. *Id*. at 9. Captain Hutton testifies that "an inmate that is on Mental Health must be housed in the Health Care Unit in cells G-1 or G-2." (Doc. 13-3). Therefore, after these incidents, and before he was placed back in the segregation unit, inmate Crenshaw was "cleared by Mental Health."[5] *Id*.[6]

---

[5] Lieutenant Ford confirms that Crenshaw had been "cleared by Mental Health" and was not under "Mental Health Observation" at the time he was housed with the plaintiff. (Doc. 13-5). Ford states that mental health inmates are placed in crisis cells within the medical unit, and are

The next incident involving Crenshaw is the subject of the plaintiff's complaint in this action. On the morning of April 25, 2013, the plaintiff was awakened from sleep "coughing and choking" because his cell was full of smoke. (Doc. 1 at 5).[7] Crenshaw had started a fire in the cell making it difficult to breath. *Id* at 5-6. Other inmates in the unit were kicking their cell doors in an attempt to alert officers, who finally arrived and evacuated the plaintiff, Crenshaw, and three other inmates. (Doc. 13-4 at 10). Two officers and a nurse became sick because of smoke inhalation and were transported to the hospital. *Id*. The plaintiff was taken to the prison medical unit where he was immediately given oxygen and breathing treatments, but was refused transport to the hospital despite a nurse's recommendation. (Doc. 1 at 60). A chest x-ray taken that day found no serious issues with the plaintiff's lungs. (Doc.13-7 at 5).

The plaintiff now alleges he was placed in the cell with Crenshaw in retaliation for his having spoken out against injustices in the prison and that the defendants "wanted something bad to happen to [him]." (Doc. 1 at 7-8). He also states the

---

never placed in the segregation unit. *Id*.

[6] In addition to the incidents which are the subject of reports submitted with the special report, the plaintiff also alleges Crenshaw had attacked another cellmate named "Bonner" who had to be moved to another cell. (Doc. 1 at 4). However, he provides no specific facts regarding this event, or the motives behind the alleged attack.

[7] The plaintiff places the incident on April 27 (doc. 1 at 8), but prison documentation indicates the event happened on April 25. (Doc. 13-4 at 10). The difference is not significant under the circumstances.

defendants have continued to retaliate against him by denying him certain privileges that are afforded other inmates, such as the opportunity to order shower shoes, and by charging him with "false disciplinaries." (Doc. 8 at 7-8).

## IV.  DISCUSSION

### A.  Failure to Protect

Although prison officials have a duty to protect inmates from violence by other prisoners, they are not the guarantors of a prisoner's safety. *Purcell ex rel. Estate of Morgan v. Toombs Co., Ga.*, 400 F.3d 1313, 1321 (11th Cir. 2005). The Eighth Amendment is violated only when a prisoner is incarcerated under conditions which expose him to a "substantial risk of serious harm" and only when prison officials are "deliberately indifferent" to that risk. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The Eleventh Circuit has interpreted *Farmer* as setting forth both objective and subjective components of an Eighth Amendment claim. *Doe v. Georgia Department of Correction*, 248 F. App'x 67, 70 (11th Cir. 2007). The objective component requires a prisoner to show that he was exposed to "an objectively substantial risk of serious harm," and that the prison official responded to that risk "in an objectively unreasonable manner." *Id*. The subjective component requires that a prison official "be aware of facts from which the inference could be drawn that a substantial risk of

8

serious harm exists," and the prison official "must also draw the inference." *Id.*[8] In other words, a prison official "must actually (subjectively) know that an inmate is facing a substantial risk of harm, yet disregard that known risk by failing to respond to it in an (objectively) reasonable manner. *Losey v. Thompson*, — F. App'x —, 2015 WL 25061 at *5 (11th Cir. Jan. 2, 2015) (quoting *Rodriguez v. Sec'y for Dep't of Corr.*, 508 F.3d 611, 617 (11th Cir. 2007) (internal quotation marks omitted) (alterations omitted)).[9] Accordingly, in order to survive summary judgment, "the plaintiff must present some evidence of prison officials' subjective awareness of a substantial risk of harm to [him]." *Goodman v. Kimbrough*, 718 F.3d 1325, 1333-34 (11th Cir. 2013).

When examined in light of the above parameters, it is clear that the defendants are entitled to summary judgment on the plaintiff's deliberate indifference claim. The basis of the plaintiff's claim is that inmate Crenshaw's behavior during the weeks prior to the April 25 incident demonstrates the defendants knew "or should have known" that he faced a substantial risk of harm from being housed with Crenshaw. However, as explained above, the standard is not whether the defendants "should

---

[8] Because the Eighth Amendment only outlaws cruel and unusual *punishments*, a prison official who fails to perceive a substantial risk of harm does not violate the Amendment because, under that circumstance, no punishment is imposed. *Doe*, 248 F. App'x at 70.

[9] In order to impose constitutional liability, it must be shown that the official's failure to adequately respond to the risk was the result of "conduct that is more than gross negligence." *Losey*, 2015 WL 25061, at *5. In other words, "[m]erely negligent failure to protect an inmate from attack does not justify liability under § 1983." *Id*., quoting *Goodman*, 718 F.3d at 1332.

9

have" recognized a danger, but whether or not they had an actual subjective awareness of a specific (and substantial) danger to the plaintiff. The Eleventh Circuit has directly rejected the argument that an Eighth Amendment claim can be based upon what a defendant *should have* surmised from particular circumstances. In *Goodman*, *supra*, the court stated:

> "[I]n other words, [the plaintiff] cannot say 'Well, they should have known.' Were we to accept that theory of liability, the deliberate indifference standard would be metamorphosed into a font of tort law - a brand of negligence redux - which the Supreme Court has made abundantly clear it is not."

*Goodman*, 718 F.3d at 1334.

In this instance, although inmate Crenshaw had been involved in violent and destructive behavior, there is no evidence that those behaviors pointed to a specific danger to the plaintiff. It is undisputed that the April 7 stabbing incident was the result of homosexual relationship between Crenshaw and the two victims, and that the other behaviors were attempts by Crenshaw to harm himself or to be generally disruptive.[10] There is no evidence that Crenshaw had a specific intent to harm the

---

[10] While it is true that after at least two of the incidents Crenshaw was placed on suicide watch, the defendants testify that Crenshaw had been "cleared by Mental Health before he was placed in segregation." (Doc. 13-3). In that regard, the defendants correctly point out that they are "entitled to rely on medical judgments made by medical professionals responsible for prisoner care." *Williams v. Limestone County, Ala.*, 198 F. App'x 893, 897 (11th Cir. 2006) (citing *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3rd Cir. 1993) and *White v. Farrier*, 849 F.2d 322, 327 (8th Cir. 1988)). It therefore was not objectively unreasonable for Crenshaw to be placed back into the segregation unit.

plaintiff, or that he had threatened the plaintiff in any way.[11]  Even if the defendants were aware of Crenshaw's disruptive actions prior to housing him with the plaintiff, "a general awareness of an inmate's propensity for being violent does not satisfy the subjective awareness requirement." *Oliver v. Harden*, 587 F. App'x 618, 620 (11th Cir. 2014).[12]  Our courts recognize that such situations are "easily distinguished from cases where the individual defendants had a clear awareness of *specific* danger of an inmate-on-inmate attack," such as when prison officials are aware of the specific "targeting" of one inmate by another, or of an inmate expressing fear for his life. *Losey*, 2015 WL 25061, at *6 (emphasis added).  Here, the plaintiff presents no facts which demonstrate the defendants possessed knowledge that he faced a specific and direct danger from Crenshaw.  Absent such evidence, he fails to establish the subjective component of his Eighth Amendment claim.

---

[11] It is also undisputed that the plaintiff made no effort to notify the defendants, or any other prison official, that he feared being housed with Crenshaw. *See* Document 1 at 4-5.  In fact, he made no attempt to notify prison authorities even after noticing that Crenshaw was in possession of a razor blade. *Id.* at 4.

[12] See also *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1101-02 (11th Cir. 2014) ("We stress that [the plaintiff] must show more than a generalized awareness of risk and much more than mere awareness of [an inmate's] generally problematic nature") (internal quotation marks omitted).  The Eleventh Circuit has recognized that finding prison officials culpable in situations where they merely possess an awareness of an inmate's generally propensity for being problematic, "would unduly reduce awareness to a more objective standard, rather than the required subjective standard set by the Supreme Court." *Carter v. Galloway*, 352 F.3d 1346, 1350 (11th Cir. 2003).

Furthermore, the court recognizes that jails and prisons are inherently dangerous places. Therefore, in order to impose constitutional liability on a prison official, "the known risk of injury must be a strong likelihood, rather than a mere possibility." *Doe*, 248 F. App'x at 71. In making this determination, the court "will not allow the advantage of hindsight to determine whether conditions of confinement amounted to cruel and unusual punishment." *Id.* (quoting *Purcell*, 400 F.3d at 1320). As stated above, the Eighth Amendment standard is not negligence, but actual subjective knowledge of substantial risk of serious harm. In this instance, hindsight might lead to the conclusion that inmate Crenshaw should have been housed alone or in a suicide cell, but without more, that does not demonstrate that the defendants were aware of a strong likelihood of injury to the plaintiff.

Finally, the plaintiff has failed to establish a genuine issue of fact with regard to the causation requirement of his Eighth Amendment claim. "[S]ection 1983 requires proof of an affirmative causal connection between the actions taken by a particular person under color of state law and the constitutional deprivation." *LeMarca v. Turner*, 995 F.2d 1526, 1538 (11th Cir. 1993) (quoting *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982)). In other words, the plaintiff must prove that a defendant's acts or omissions were the *proximate cause* of any injuries. *Id.* In that regard, the defendants correctly point to the speculative nature of the plaintiff's contention that he would have avoided injury by being placed in one of the

12

other cells in the segregation unit.[13] The plaintiff acknowledges that when the fire was set by Crenshaw on April 25, other inmates in the unit were "trying to get the attention of officers because it (sic) was so much smoke in this little poorly ventilated area that they could barley breath." (Doc. 1 at 5-6). Therefore, other inmates in the nearby cells, along with the plaintiff, required evacuation as a result of the fire. In reviewing a § 1983 claim against government officials, this court must focus its inquiry "on whether an official's acts or omissions were the cause - not merely a contributing factor - of the constitutionally infirm condition." *LaMarca*, 995 F.2d at 1538. It seems evident therefore that the plaintiff cannot cite his placement in the cell with Crenshaw as the proximate cause of his alleged smoke inhalation injuries. It would be pure speculation for the court to infer that the plaintiff would have avoided injury had he been placed in an adjoining cell. While it is true that for purposes of summary judgment all reasonable inferences must be drawn in favor of the non-moving party, the court "cannot reasonably base an inference on mere supposition." *Losey*, 2015 WL 25061, at *6.

**B.     Retaliation**

To the extent the plaintiff alleges his placement in a cell with inmate Crenshaw was retaliation for his having "blown the whistle on [the defendants] about several

---

[13] The plaintiff asserts that there was "another vacant cell right across from the cell [in which] [he] was placed." (Doc. 8 at 5).

negligent incidents," his claim is due to be dismissed. In the initial complaint in this matter, filed May 20, 2013, the plaintiff alleged that "[a] little over a month ago" certain inmates were "negligently placed" in the same living quarters as their enemies, resulting in serious injury to one of the inmates. (Doc. 1 at 7). The plaintiff states that he and another inmate brought the situation "to the attention of several agencies," implicating Captain Hutton and "ICS Officers." *Id*. He therefore contends Captain Hutton and the ICS Officers "moved [him] into a hazardous situation" in retaliation for his "speaking out against the injustices that takes (sic) place [at the prison]." *Id*. at 7-8.[14]

It is well settled that "an act in retaliation for the exercise of a constitutionally protected right is actionable under § 1983 even if the act, when taken for different reasons, would have been proper." *Howland v. Kilquist*, 833 F.2d 639, 644 (7th Cir. 1987). However, it has been recognized that claims of retaliation are subject to abuse by prisoners. *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983).[15] Therefore, a plaintiff must present facts which show that his exercise of a constitutionally protected right was a "motivating factor" behind a defendant's actions against him.

---

[14] In this same pleading, the plaintiff contradicts himself to some degree by acknowledging that his placement in the segregation unit was for his having failed to obey a direct order. (Doc. 1 at 7).

[15] "[B]ecause we recognize both the near inevitability of decisions and actions by prison officials to which prisoners will take exception and the ease with which claims of retaliation may be fabricated, we examine prisoners' claims of retaliation with skepticism and particular care." *Colon v. Coughlin*, 58 F.3d 865, 872 (2nd Cir. 1995) (citing *Flaherty*, 713 F.2d 10).

14

*Mount Healthy City School District Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). Accordingly, the mere fact that a prisoner has previously filed a lawsuit or grievance does not alone infer a retaliatory motive on the part of prison officials, especially where discipline is imposed for actual violations of rules.  To maintain otherwise would invite prisoners to openly flout prison rules on the heels of having filed a grievance or lawsuit, and then assert a § 1983 claim arguing that they were disciplined in retaliation for having exercised constitutional rights.  *See Orebaugh v. Caspari*, 910 F.2d 526 (8th Cir. 1990); *Riley v. Evans*, 41 F.3d 1507, *2 (Table), 1994 WL 652778 (6th  Cir. Nov. 18, 1994).

In light of the above guidelines, it is clear that the defendants are entitled to summary judgment on the plaintiff's retaliation claims.  It was incumbent upon the plaintiff to plead specific facts from which the court could, at a minimum, infer a retaliatory motive on the part of the defendants.  In other words, the plaintiff's complaint "must contain enough facts to state a claim of retaliation by prison officials that is 'plausible on its face.'"  *Douglas v. Yates*, 535 F.3d 1316, 1321 (11th Cir. 2008).  In this case, the plaintiff has done nothing more than make the conclusory allegation that his placement in Crenshaw's cell was motivated by his having contacted "several agencies" about events at the Bibb Correctional Facility.[16]  He

---

[16] Conclusory allegations do not raise the allegation of retaliatory motive "above the speculative level." *Smith v. Florida Dept. of Corrections*, 375 F. App'x 905, 911 (11th Cir. 2010).

makes no showing regarding the specific contents of those complaints, the specific timing of those complaints, or how the defendants would have been made aware of the complaints. Additionally, he pleads facts which belie his claim of retaliation by acknowledging that his placement in segregation on that occasion was in response to his having failed to obey a direct order from a correctional officer. (Doc. 1 at 7). Furthermore, he fails to refute Captain Hutton's statement that, because of limited space, segregation inmates cannot be housed in single cells unless they are "close custody." (Doc. 13-3). The plaintiff points to nothing in the record which would allow the court to plausibly infer a retaliatory motive on the part of Captain Hutton or the other defendants. Where, as here, the pleaded facts "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but has not shown - that the pleader entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal quotations omitted).

The defendants are also entitled to summary judgment to the extent the plaintiff alleges the various disciplinary actions taken against him were in retaliation for his whistle blowing activities. It is undisputed that none of the defendants were directly involved in asserting or presiding over the disciplinary charges he faced at Bibb Correctional Facility.[17] There is therefore no showing of a "causal relationship"

---

[17] From the court's review of the documentation presented in the special report (doc. 13-2), it appears the only connection any of the defendants have to the various disciplinary actions is Felicia Ford's signature confirming her service of certain of the disciplinary reports on the

between the disciplinary actions and the alleged grievances written by the plaintiff to the various agencies. *See O'Bryant v. Finch*, 637 F.3d 1207 (11th Cir. 2011).

More importantly, even if the plaintiff had connected the named defendants to the disciplinary actions, his complaint would still be subject to dismissal for the reason that he either pled guilty or was found guilty in all of the disciplinary actions which are referenced in the record. (Doc. 13-2). Where a prisoner alleges that the retaliation was in the form of a disciplinary action, his claim is precluded if the discipline was imparted for an actual violation of prison rules. *Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994); *Earnest v. Courtney*, 64 F.3d 365, 367 (8th Cir. 1995). The Eleventh Circuit has recently addressed this issue and has adopted the approach taken by the Eighth Circuit in *Henderson* and *Earnest*. *See O'Bryant, supra*. In *O'Bryant*, the Eleventh Circuit stated that "an inmate cannot state a claim of retaliation for a disciplinary charge involving a prison rule infraction when the inmate was found guilty of the actual behavior underlying that charge after being afforded adequate due process." *O'Bryant*, at 1215. The Court added an additional requirement that there must be "some evidence" to support the disciplinary hearing officer's findings of fact.[18] *Id*. at 1215. Therefore, as long as a prisoner is found

---

plaintiff. *Id*. at 10, 19, and 21.

[18] In this regard it is clear that the court is not to "retry" the disciplinary charges or second guess the findings of the prison administration. To do otherwise "would render the prison disciplinary system impotent by inviting prisoners to petition the courts for a full retrial each time

guilty of an actual disciplinary infraction after being afforded due process, and there was some evidence to support the disciplinary findings, a prisoner cannot later state a claim of retaliation against the officer who reported the infraction.[19]  *Id*. at 1215.

In this instance, not only does the plaintiff fail to provide specific facts regarding the particular disciplinary actions which he claims were asserted for retaliatory motives, but the prison administrative records submitted by the defendants show that the plaintiff pled guilty to all but one of the disciplinary charges, and was found guilty by a hearing officer in the other one, after having been given written notice of the charges and being afforded the opportunity to present written testimony and/or submit questions to witnesses.  (Doc. 13-2).[20]  Therefore, the plaintiff's admissions of guilt and the finding of guilt by the hearing officer "essentially checkmates [the plaintiff's] retaliation claim."  *Henderson*, *supra*, at 469; *see also Crittendon v. Campbell*, 2007 WL 2853398, at *7 (M.D. Ala. Sept. 27, 2007); *O'Bryant v. Finch*, 2008 WL 691689, at *9 (N.D. Fla. March 12, 2008).

---

they are found guilty of an actual disciplinary infraction *after* having filed a grievance." *O'Bryant*, 637 F.3d at 1216.

[19] The minimal procedural due process requirements are outlined in *Wolff v. McDonnell*, 418 U.S. 539 (1974).  The holding in *Wolff* requires: (1) that the inmate be given written notice of the charges, (2) that the fact-finder issue a written statement outlining the evidence relied upon and the reasons for any disciplinary action and (3) that the inmate be allowed to call witnesses and present documentary evidence, provided it will not be unduly hazardous to institutional safety or correctional goals.  418 U.S. at 564-566.

[20] On the one disciplinary charge where the plaintiff was found guilty by the hearing officer, the reasons for the finding are set out in a written statement indicating the particular testimony on which the hearing officer relied.  (Doc. 13-2 at 27).

## V.  CONCLUSION

For the reasons stated above, the defendants' special report is treated as a motion for summary judgment and, as such, it is due to be granted and this action dismissed with prejudice.  An appropriate order will be entered.

**DONE**, this the   26th   day of March, 2015.

_____
SENIOR UNITED STATES DISTRICT JUDGE